UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cr-167-PPS |
| | ) | |
| | ) | |
| MICHAEL CRUZ. | ) | |

**OPINION AND ORDER**

In November 2018, less than two years ago, Michael Cruz was sentenced to a term of 57 months imprisonment after pleading guilty to possession with intent to distribute heroin. He has now filed a motion [DE 70] seeking a compassionate release from prison because of what he says are his serious health problems and a heightened risk of contracting the COVID-19 virus while incarcerated. After a review of the briefing and evidence submitted by the parties, I have determined this case can be resolved without an evidentiary hearing, and I will deny Cruz's motion.

**Background**

Cruz was arrested as part of a drug sting operation after he and his co-defendant tried to sell heroin to a confidential informant working with the DEA. When the defendants' car was searched, authorities recovered 3.6 kilograms of heroin hidden within the frame of the backseat of the car. Cruz entered into a plea agreement with the Government and pleaded guilty to one count of possession with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting. On November 6, 2018, I sentenced Cruz to a term of 57 months imprisonment.

[DE 64.]

Cruz is currently 41 years old. He has been detained in this case since November 2017 and thus has served roughly 35 months of his sentence. He is currently housed at the Thomson Satellite Campus (a low security facility) in Illinois and, with goodtime credit, has a projected release date of December 2021. Included with his motion is a job offer letter to work as a laborer and a statement from his uncle that he will help support Cruz upon his release.

He has moved for compassionate release on account of his health issues, primarily his reduced kidney capacity functioning after having his right kidney removed in 2009. He further states that he has had above normal blood pressure readings on multiple occasions since being in the custody of the Bureau of Prisons (BOP). But there is no evidence that he has been diagnosed with hypertension or that he is suffering from kidney failure. In fact, the medical records do not reflect that Cruz has any kidney disease at all, just that he only has a single kidney. Additionally, he offers up his observation that the facility in which he is housed has lackluster plans for dealing with the COVID-19 crisis. The Government disputes his characterization of the BOP's efforts to contain the virus and describes its Coronavirus Action Plan in detail. [DE 72 at 3-4.]

Importantly, however, Cruz does not indicate that he has been exposed to COVID-19 or tested positive for the virus. Nor does he say that many inmates around him have contracted the virus. Instead, he tells me that the correctional officers at his

facility aren't doing enough. According to the BOP's website, of the 1183 total inmates at USP Thomson, 4 are currently positive for COVID-19 as well as 8 staff members. Additionally, 54 inmates and 47 staff members have recovered from the virus. There have been no deaths at Thomson.  See *https://www.bop.gov/coronavirus*.

## Discussion

Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020). It is governed by 18 U.S.C. § 3582, which was recently amended by the First Step Act of 2018. The statute contains two general requirements: (1) an exhaustion requirement, by which individual inmates must first seek relief from the BOP/the Warden at their institution before going to court; and (2) a substantive requirement, containing numerous elements that I must consider prior to granting compassionate release. 18 U.S.C. § 3582. It is the movant's burden to show that a sentence reduction based on compassionate release is warranted. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020).

On June 15, 2020, I denied a motion for compassionate release that Cruz filed because there was no indication in it that he had first requested compassionate release from the warden at USP Thomson or the BOP. [DE 69.] But the parties agree that since then Cruz has sufficiently exhausted his administrative remedies. Thus, the only issue is whether "extraordinary and compelling reasons" for compassionate release exist. To answer this question, I must consider the sentencing "factors set forth in section 3553(a)

to the extent they are applicable" as well as any pertinent policy statements from the U.S. Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The Section 3553(a) factors include (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and (3) the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a).

Here, I need not address the Section 3553(a) factors in detail because Cruz's motion cannot succeed for other reasons. While Cruz has served most of his sentence at this point, appears to have a solid plan upon release, and will not be a threat to the community either, a sentence reduction for compassionate release is not a parole-type proceeding. Instead, it requires "extraordinary and compelling reasons [that] warrant" a reduction in sentence "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). That is a high bar to clear.

While the relevant policy statement (USSG § 1B1.13) has not been updated since the passage of the First Step Act of 2018 or since the COVID-19 pandemic began, it is still the policy statement relevant to the inquiry before me. *See, e.g., United States v. Redd*, 444 F.Supp.3d 717, 724 (E.D. Va. 2020) ("[T]here does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"). The Sentencing Commission's policy statement provides specific examples of what may be extraordinary and compelling circumstances, but the list is

-4-

not exhaustive. Unsurprisingly then, courts have concluded that "the COVID-19 pandemic, paired with a medical condition known to exacerbate the risk of substantial injury or death, is an extraordinary and compelling factor which may be considered." *United States v. Brant*, 2:18-cr-20155-TGB-MKM, 2020 WL 2850034, at *5 (E.D. Mich. June 2, 2020).

But the COVID-19 pandemic on its own is not an extraordinary and compelling reason to grant a sentence reduction for compassionate release. Instead, an inmate must show that he is at some sort of especially heightened risk of contracting COVID-19 in prison or that he has health conditions which would make it exceptionally dangerous if he were to contract the virus, or both. Cruz has not done that. While the Centers for Disease Control have recognized that individuals with chronic kidney disease are at an increased risk of severe illness from COVID-19, having only one kidney is not the same as having chronic kidney disease. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Cruz is not on dialysis or taking any medication for his kidneys. Likewise, while high blood pressure or hypertension *might* put an individual at increased risk, *id.*, Cruz has not been diagnosed with hypertension. Instead, he says his blood pressure has been elevated at times. But that's not the same thing.

Finally, USP Thomson appears to have been relatively successful in containing the spread of the virus. To be sure, the fact there are still more than a dozen cases amongst inmates and staff is a problem, but it pales in comparison to the outbreaks at

other facilities in which hundreds of inmates have contracted the virus and many have died. Cruz and the Government have a different perspective on how well the BOP is mitigating the risks at USP Thomson. But setting those differences aside, whatever exactly is being done, it seems the measures the BOP are taking are working relatively well. The number of inmates and staff with the virus is quite low. Furthermore, COVID-19 remains a reality outside of correctional facilities and prisons. In sum, given the fact Cruz appears to be a relatively healthy young man, there is simply not a sufficient basis to grant him compassionate release.

## Conclusion

For the foregoing reasons, Michael Cruz's Motion for Compassionate Release [DE 70] is DENIED. Because the motion is without merit, I do not think the appointment of counsel in this case is necessary and Cruz's request for court-appointed counsel to handle this matter is likewise DENIED.

SO ORDERED on September 21, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT